THE CITY OF NORWALK.

(Circuit Court of Appeals, Second Circuit. January 22, 1901.)

No. 2

COLLISION—SAILING YACHT AND PROPELLER—MUTUAL FAULT.

A collision between a sloop yacht and a propeller, crossing in the night at an obtuse angle, *held* to have been due to the fault of both vessels,— of the yacht, in that she failed to have her lights properly screened, by reason of which they crossed and misled the propeller as to her course: and of the propeller, because she failed to take timely precaution to keep out of the way after discovering that the yacht did not keep the course she was at first supposed to be on.

Appeal from the District Court of the United States for the Southern District of New York.

The following is the opinion of the court below (BROWN, District Judge):

"The above libel was filed to recover damages to the sloop yacht Nirvana through collision at about 10 p. m. of August 16, 1897, in Long Island Sound off Greenwich Point with the propeller City of Norwalk. The yacht was about 60 feet long, sailing closehauled on the starboard tack, with the wind westerly and heading about W. S. W., making about six miles an hour. The propeller was bound eastward, heading about N. E. by E. ½ E. Shortly before collision each vessel turned to the southward, so that the propeller at the time of collision headed about E. S. E. and the yacht about S. E. by E., the boats sagging together and the yacht being injured on her starboard side.

"The yacht, when first seen from the propeller, bore 3 or 4 points to port, estimated to be one-half or three-quarters of a mile distant, and according to the testimony for the propeller, both the red and green lights of the yacht were seen. In that situation the propeller would naturally and rightly keep on her course, as she would naturally cross the apparent course of the yacht sometime before the yacht would reach her, and the latter would pass well astern of the propeller. As the boats came nearer together, however, it was observed that the yacht did not fall astern as she would naturally do, but still exhibited both colored lights; and when within 200 or 300 feet of each other, according to the propeller's testimony, the propeller sounded danger signals, and ported and soon backed. When the alarm was sounded the captain testifies that he thought the yacht was keeping off to the southward.

"On behalf of the yacht it is contended that her red light could not have been seen at any time by the propeller because hidden by the fore staysail; that she heard the danger signals of the propeller when the vessels were about 50 or 60 feet apart, and that the yacht then paid off, when collision was unavoidable, in order to ease the blow.

"One of the lights and a screen board of the yacht were exhibited in evidence. The board was constructed wholly different from the requirements. No actual trial was made of the angle to which the light would extend; but from the situation of the light and the short and low screen, I should judge it impossible that the red light should not have crossed and been visible a good deal to starboard of directly ahead, so that both colored lights would be seen though the yacht was not headed for the observer.

"I do not feel warranted, therefore, in discrediting the testimony of the master and pilot of the Norwalk, to the effect that they saw both lights for a considerable period before the collision, when from the undoubted situations and courses of the two boats the yacht's red light alone should have been seen. Considering also, that there was a whole sail breeze, and that the fore staysail would naturally belly out a good deal, I ought not to accept the theoretical contention of the yacht that the staysail would necessarily hide

the red light, against the positive testimony of the propeller's officers. Accepting their statement on this point, the yacht must be held in fault, because her lights were misleading, and undoubtedly did mislead the officers of the Norwalk for a time in the belief that the yacht's direction was such that she would naturally go well astern of the propeller, without any maneuvering on the propeller's part. The direction of the yacht, however, was at least two points more to the southward than her exhibition of her two colored lights would indicate, and this different actual heading prevented the yacht from falling astern. I cannot hold that this defect in the lights was immaterial. Though the night was clear in a general sense, the evidence on both sides leaves no doubt that it was somewhat hazy upon the water, so that boats could not be well distinguished at a distance. They were not distinguished by either until much nearer than they would have been in a clear atmosphere; and the yacht evidently would not be clearly seen as soon as the propeller.

"Notwithstanding this fault in the yacht in regard to the crossing of her lights, I cannot exempt the propeller, as it is plain from the officers' testimony that they ought to have maneuvered earlier than they did to avoid the yacht, when it became evident that the yacht was not pursuing the course which was at first supposed, but continued on the same bearing instead of falling astern. I do not think it possible, however, that the vessels were so near as the yacht's witnesses state, namely, within 50 or 60 feet, at the time when the propeller gave danger signals. They were then probably from 200 to 300 feet apart, as the propeller's witnesses stated. The changes of course by the two boats before collision strongly confirm this. The yacht changed by paying off from 6 to 7 points up to the time of collision, which she could not have done in going less than 200 feet; the propeller changed from 4 to 5 points, which would have required her to traverse about 300 feet. If the curves of the courses of the two vessels are drawn upon that basis backward from their positions at collision, the two boats at the time they began to change to the southward will be found to be about 300 feet apart. The position of the boats would also be shown by such a sketch to be such that a very little porting would have been required to allow the boats to pass clear of each other, even if they would not have cleared if the yacht had strictly maintained her course. The danger at that moment, however, at a distance of only 300 feet apart each having a speed of 6 or 7 knots, was so imminent that an error at that moment cannot be treated as a legal fault. The fault was in bringing the two boats into such a position; and for doing this both, as I have said, were to blame; the yacht, by reason of her misleading lights, and the Norwalk by her delay of any maneuvers to avoid the yacht, which she was bound to do, for some time after the yacht's course ought to have been perceived to be threatening by her failure to fall astern.

"Decree for the libelants for one-half of the damages and costs."

Le Roy S. Gove, for appellant.
N. D. Lawton, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

PER CURIAM. Decree affirmed on opinion of court below, with costs.